IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **ALEX GOLDOVSKY, et al.**<br>*Plaintiffs,*<br><br>v.<br><br>**MAURICIO J. RAULD, et al.**<br>*Defendants,* | §<br>§<br>§<br>§<br>§    CASE NO. 6:24-CV-00159-ADA-DTG<br>§<br>§<br>§ |

REPORT AND RECOMMENDATION DENYING MOTION (ECF NO. 24)
AND GRANTING MOTION (ECF NO. 34)

TO:   THE HONORABLE ALAN D ALBRIGHT,
      UNITED STATES DISTRICT JUDGE

This Report and Recommendation is submitted to the Court pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), and Rules 1(d) and 4(b) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

Before the Court is Defendants Timothy B. Gertz and PV Advisors, PLC's Motion to Dismiss for Lack of Jurisdiction (ECF No. 24) and Defendant Citizens & Northern Bank's Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim (ECF No. 34). After carefully considering the briefs and the applicable law, the Court **RECOMMENDS** that Gertz and PV Advisors' Motion be **DENIED** and C&N's Motion to dismiss for lack of jurisdiction be **GRANTED**. Because the Court finds that it lacks personal jurisdiction over C&N, the Court does not reach C&N's Rule 12(b)(6) argument.

I.   FACTUAL BACKGROUND

This case arises out of an alleged Ponzi scheme perpetrated by Roy Hill, Eric Shelly, and two entities they controlled—Clean Energy Technology Association, Inc. ("CETA") and Freedom Impact Consulting, LLC ("FIC"). ECF No. 1 at 1–2. For over three years, Hill and

1

Shelly ran an elaborate Ponzi scheme, raising at least $155 million from over 500 investors nationwide. *SEC v. Hill*, No. 6:23-CV-00321-ADA, ECF No. 1 (W.D. Tex. May 3, 2023). Hill and his company, CETA, claimed to have developed a new technology that combined removal and underground storage of carbon dioxide with enhanced oil and gas production. ECF No. 1 at ¶ 36. The technology was a device known as a carbon capture unit ("CCU"). *Id.* But the CCUs did not produce business revenues. *Id.* at ¶ 41. The only CCUs CETA sold were non-working prototypes. *Id.*

Plaintiffs allege that Hill and Shelly funded their scheme through partnerships created by FIC. Plaintiffs contend that FIC, Mauricio Rauld, and Premier Law Group registered new partnerships ("FIC Partnerships") around the end of each quarter, raised new funds from investors, and used the funds to pay quarterly returns to investors in earlier-created partnerships. *Id.* at ¶ 50. Each of the FIC Partnerships sent investors a business plan that allegedly contained untrue statements and omissions of material facts. *Id.* at ¶¶ 60–61. For each, FIC Partnership, investor funds would be deposited with Defendant Citizens & National Bank ("C&N"), and then transferred to Wells Fargo Bank for use by CETA. *Id.* at 15. Plaintiffs allege that Defendant Rauld, his law firm, Premier Law Group, Gertz, and PV Advisors were instrumental in making this Ponzi scheme possible, because they provided legal or accounting services to the FIC partnerships. *Id.* at ¶¶ 88, 95. Plaintiffs also allege that Citizens & National Bank ("C&N") and Wells Fargo were aware of, and substantially assisted, the Ponzi scheme. *Id.* at ¶¶ 117–51.

Based on this alleged conduct, Plaintiffs filed this putative class action, asserting, among other things, that Defendants violated the Texas Securities Act, aided and abetted violations of the Texas Securities Act, and knowingly participated in breach of fiduciary duty. *Id.* at 56–62.

## II.  LEGAL STANDARD

Defendants Gertz, PV Advisors, and C&N seek dismissal under Rule 12(b)(2) because the Court allegedly lacks personal jurisdiction over them. On a motion to dismiss, the burden of establishing personal jurisdiction rests with the plaintiff. *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982). The plaintiff need only make a prima facie showing of personal jurisdiction to survive a motion to dismiss. *Id.* Courts resolve factual conflicts in favor of the plaintiff. *Id.*

Due process requires a nonresident defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 (1940)). Personal jurisdiction may be general or specific. Courts may exercise specific personal jurisdiction "[w]hen a controversy is related to or 'arises out of' a defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). Importantly, "[t]he unilateral activity of [a plaintiff] who claim[s] some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 222 (5th Cir. 2012) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)).

In deciding whether the exercise of specific personal jurisdiction satisfies due process, the Fifth Circuit analyzes three factors. These include (1) whether the defendant purposely directed activities toward or availed itself of the privilege of doing business in the forum state; (2) whether the claim arises out of the defendant's conduct directed to the forum; and (3) whether it is fair and reasonable to exercise personal jurisdiction over the defendant. *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). If the plaintiff can satisfy the first two factors, the defendant bears the burden of proving that it would be unfair or unreasonable to

exercise jurisdiction over it. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).

### III. DISCUSSION

Defendants Gertz, PV Advisors, and C&N are not subject to general jurisdiction in this Court. The parties do not dispute the lack of general jurisdiction in Texas. ECF No. 39 at 3; ECF No. 44 at 3. For general jurisdiction, a defendant's contacts must be so continuous and systematic as to make that defendant "at home" in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 138–39 (2014). An individual is "at home" in the state where the individual is domiciled. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). An entity may be considered "at home" in the states where they were organized and where they have their principal place of business. *See Garcia Hamilton & Assoc's, L.P. v. RBC Cap. Mkts.*, LLC, 466 F. Supp. 3d 692, 699 n.5 (S.D. Tex. 2020).

None of these defendants are "at home" in Texas. Gertz is domiciled in and "at home" in Arizona. ECF No. 1 at ¶ 14. PV Advisors is organized in Arizona and its principal place of business is located in Arizona. ECF No. 1 at ¶ 15. C&N Bank is organized in Pennsylvania and its principal place of business is located in Pennsylvania. *Id.* at ¶ 17. Because PV Advisors and C&N are based outside of Texas, neither is "at home" in Texas and there is no general jurisdiction over them in this Court. *See Sec. & Exch. Comm'n v. Stanford Int'l Bank, Ltd.*, 112 F.4th 284, 294 (5th Cir. 2024) (determining lack of general personal jurisdiction in Texas over Antigua-based defendants).

The Court can exercise personal jurisdiction over the defendants only if Plaintiffs demonstrate that the requirements for specific jurisdiction are satisfied. Specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co. v. Mont. Eight Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021).

These defendants argue that this Court also lacks specific jurisdiction over them. They contend that they lack sufficient minimum contacts with Texas. ECF No. 24 at 4, 11; ECF No. 34 at 8. These defendants argue that they did not direct their activities towards Texas. ECF No. 24 at 15; ECF No. 34 at 8. C&N specifically argues that it is not registered to do business in Texas, has no physical address in Texas, and does not own or operate offices or branches in Texas. ECF No. 34-1 at ¶¶ 7–9. These defendants also argue that this suit does not arise out of or relate to their contacts with Texas. ECF No. 24 at 15; ECF No. 34 at 9–11.

### A. The Court can exercise specific jurisdiction over Gertz and PV Advisors.

Plaintiffs argue this Court can exercise specific jurisdiction over Gertz and PV Advisors for several reasons. First, Plaintiffs point to the accounting and tax services Gertz and PV Advisors provided to at least fifty-nine Texas limited partnerships. Second, Plaintiffs point to the franchise tax reports they filed with the Texas Comptroller of Public Accounts for these limited partnerships. Third, Plaintiffs point to the Schedules K-1 that they sent to partners in Texas. Finally, Plaintiffs contend that Gertz and PV Advisors committed fraud and participated in the managing partner's breaches of fiduciary duty, which caused harm in Texas. ECF No. 39 at 3.

Plaintiffs allege that Gertz and PV Advisors filed franchise tax returns for the FIC partnerships—fifty-nine of which are registered with the Texas Secretary of State. ECF No. 1 at ¶¶ 102, 110. Plaintiffs also allege that Gertz and PV Advisors prepared false or misleading Schedules K-1 for the partners in the FIC partnerships and sent them directly to those partners. ECF No. 1 at ¶ 110 (Schedule K-1 from March 6, 2020 identifies PV Advisors as the preparer). This includes 56 Schedules K-1 sent to partners in Texas for the FIC partnerships formed in 2022. ECF No. 39 at 12; ECF No. 39-1 at ¶ 21.

By filing franchise tax reports with the Texas Comptroller through PV Advisors' tax preparation software, Gertz and PV Advisors availed themselves to the State of Texas.

5

*Inspection Leasing Inc. v. Tavas LLC*, No. 1:24-cv-00319-DAE, 2024 WL 4329035, at *1 (W.D. Tex. Aug. 30, 2024) (holding that Illinois and Nevada accountants were subject to specific jurisdiction in Texas because they filed tax returns in Texas for the plaintiffs). Here, Shelly and FIC entered into an engagement agreement with Gertz and PV Advisors from PV Advisors' Arizona office. ECF No. 24-1 at ¶ 11. Gertz and other employees of PV Advisors prepared franchise tax reports based on information Shelly and the FIC partnerships' accounting service provided. *Id.* at ¶ 12. Gertz and PV Advisors directed franchise tax reports to the State of Texas and thereby conducted business in the State of Texas. Although Gertz and PV Advisors did not interface with any Texas website, they knew the filings would be sent to Texas through their tax preparation software. It was no accident that the tax reports ended up in Texas. Gertz and PV Advisors reported partners' respective shares of the partnership's income, deductions, and credits on the Schedules K-1 and then mailed over 100 of those Schedules K-1 to partners in Texas. ECF No. 39 at 11.

Gertz and PV Advisors directed their activities toward Texas by preparing these federally required Schedules K-1. *See Kinnie Ma Individual Ret. Acct. v. Ascendant Cap., LLC*, No. 1:19-CV-1050-LY, 2021 WL 11963056, at *4 (W.D. Tex. Aug. 25, 2021) (holding that the court has jurisdiction over an auditing firm that mailed thousands of federally required Schedules K-1 to partners in Texas). Plaintiffs' claims arise out of Gertz and PV Advisor's tax services, as these services helped cover up and prolong the alleged Ponzi scheme. *Id.* at *4 (finding plaintiffs' claims arise out of the defendant's auditing services because such services helped cover up and prolong the alleged Ponzi scheme).

Finally, the Court's exercise of jurisdiction over Gertz and PV Advisors would not offend traditional notions of fair play and substantial justice. Gertz and PV Advisors argue that the

exercise of personal jurisdiction is not in the best interests of the several states and would be inconsistent with constitutional requirements of due process given that Gertz and PV Advisors lack substantial and continuous contacts with Texas. ECF No. 24 at 18. Finding that Gertz and PV Advisors had sufficient contacts with the forum, the Court disagrees. Arizona is not so far from Texas as to render travel here fundamentally unfair. *See, e.g., Greathouse v. Cap. Plus Fin. LLC*, 690 F. Supp. 3d 610, 633 (N.D. Tex. 2023) (noting that even if it were inconvenient to make trips to Texas for hearings or trial, once minimum contacts are established, the interests of the forum and the plaintiff justify even large burdens on the defendant).

It is reasonable to require a company that undertakes to provide accounting services for Texas partnerships to be haled into a Texas court if litigation arises from those services. *Gutierrez v. Cayman Islands Firm of Deloitte & Touche*, 100 S.W.3d 261, 275 (Tex. App.—San Antonio, 2002, no pet.) (holding that the exercise of jurisdiction in Texas over a company based in the Cayman Islands is fair and reasonable where the company audited a Texas-based firm). Texas has a strong interest in protecting its citizens from fraudulent activities that violate its securities laws. *Kinnie Ma*, 2021 WL 11963056, at *4. Society's interest in promoting accounting services is not undermined where accountants are held to answer for tortious conduct in those states in which their services facilitated a Ponzi scheme. *Id.* As a result, the Court finds that it has personal jurisdiction over Gertz and PV Advisors in Texas.

### B. The Court lacks specific jurisdiction over C&N.

C&N argues that it has no activities in Texas, and thus no contacts that could satisfy the minimum contacts requirement. ECF No. 24 at 8. C&N is not registered to do business in Texas, has no physical address in Texas, and does not own or operate offices or branches in Texas. *Id.* C&N argues that it did not contract with any Texas residents. *Id.* C&N emphasizes that it was Shelly, a Pennsylvania resident, who opened bank accounts at C&N for the FIC partnerships. *Id.*

7

at 9. C&N adds that although fifty-nine of the FIC partnerships were registered in Texas, all but one of the contact addresses listed on the account opening paperwork were Pennsylvania addresses, the signatories on all accounts were Pennsylvania residents, and those signatories transacted all their business on the accounts from Pennsylvania. *Id.*; ECF No. 34-1 at ¶¶ 14, 15.

> i. **C&N's contracts with, and provision of banking services to, Texas-based FIC partnerships are insufficient to confer specific jurisdiction over C&N in Texas.**

First, Plaintiffs argue that C&N contracted with sixty-six Texas residents who participated in the Ponzi scheme. ECF No. 44 at 6. Plaintiffs note that under Texas law, a partnership is a legal entity that is separate and distinct from its partners. *Id.* (citing *In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 463–64 (Tex. 2011)). Thus, by opening sixty-six bank accounts for FIC partnerships registered in Texas, Plaintiffs assert that C&N knowingly contracted with Texas residents. *Id.* at 6, 7.

That argument is unavailing. Merely contracting with a resident of the forum state does not establish minimum contacts. *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) (quoting *Moncrief Oil Int'l, Inc. v. Gazprom*, 481 F.3d 309, 311 and citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). This is because jurisdiction must not be based on the fortuity of one party residing in the forum state. *Id.*

Contracting with a known Texas resident is insufficient to confer jurisdiction where there is no evidence that the contract was consummated in Texas, and it is not clear that Texas would govern those contracts. *See Prod. Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir. 1974) (finding of specific jurisdiction rested heavily on the fact that the contract was consummated in Texas and that Texas law would likely apply to the contract). Here, it appears the contracts were

formed in Pennsylvania and the performance of those contracts occurred in Pennsylvania where C&N maintains offices and branches. ECF No. 24 at 9.

> ii. C&N's wire transfers to Texas and receipt of wire transfers from Texas do not establish that C&N availed itself of the privilege of conducting activities in the forum state as required to establish minimum contacts.

Plaintiffs also argue that the Court can exercise specific jurisdiction over C&N because C&N sent and received 389 wire transfers to and from Texas for millions of dollars in furtherance of the Ponzi scheme. ECF No. 44 at 7–8. Plaintiffs argue that each wire transfer to the Roy Hill Trust in Texas constitutes a physical entry into Texas. *Id.* at 8. Plaintiffs cite *Walden v. Fiore*, in support of their argument. *Id.* at 4. In *Walden*, the Supreme Court stated that "although a physical presence in the forum is not a prerequisite to jurisdiction, . . . , physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." 571 U.S. 277, 285 (2014) (internal citation omitted). Plaintiffs argue then that each time C&N wired funds to the Roy Hill Trust in Texas, C&N physically entered the state because wiring funds constitutes "some other means" of physical entry. ECF No. 44 at 8. Regardless of whether wiring funds constitutes a physical entry, that entry is merely a relevant contact—not necessarily a sufficient contact. *Walden*, 571 U.S. at 285.

*Walden* does not support Plaintiffs' position. There, the Supreme Court found that the Ninth Circuit erroneously held that the defendant expressly aimed his submission of an allegedly false affidavit at Nevada by submitting the affidavit with knowledge that it would affect persons with a significant connection to Nevada. *Id.* at 291 (declining to apply the *Calder* effects test to the facts before it). The Supreme Court reversed the Ninth Circuit's exercise of specific jurisdiction over the defendant explaining that a defendant's relationship with a plaintiff or third

party, standing alone, cannot support jurisdiction. *Id.* C&N did not expressly aim its wire transfers at Texas because C&N Bank wired funds to the Roy Hill Trust with knowledge that it would affect persons with a connection to Texas. Plaintiffs incorrectly maintain that the Court can exercise personal jurisdiction over C&N in Texas based on C&N's relationship with third parties—Shelly and the FIC partnerships.

Additionally, sending wire transfers to Texas or receiving wire transfers from Texas is not enough to establish minimum contacts. *United My Funds, LLC v. Perera*, No. 4:19-CV-373, 2020 WL 674364, at *4 (E.D. Tex. Feb. 11, 2020) (holding that receipt of a wire transfer, even if the wire transfer came from Texas, cannot alone establish minimum contacts)); *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985) (determining there were insufficient contacts with Texas even though the defendant made telephone calls to Texas, wired payments to Texas, and entered into contracts with two Texas entities); *Resol. Tr. Corp. v. First of Am. Bank*, 796 F. Supp. 1333, 1336–37 (C.D. Cal. 1992) (holding that "wire transfers or similar contacts" are insufficient to create personal jurisdiction); *United Fin. Mort. Corp. v. Bayshores Funding Corp.*, 245 F. Supp. 2d 884, 894 (N.D. Ill. 2002) (deeming insufficient transactions such as wire transfers that are fortuitous rather than purposeful). The wire transfers C&N sent to Texas, as well as the wire transfers C&N received from Texas, are fortuitous and do not demonstrate that C&N "purposefully established minimum contacts within" Texas. *Burger King Corp.*, 471 U.S. at 476.

In *Patterson*, the Fifth Circuit found that the defendant lacked sufficient contacts with Texas, even though the defendant made telephone calls to Texas, wired payments to Texas, and entered into contracts with Texas entities. 764 F.2d at 1147. The court noted that the activities of the parties in *Patterson* were not centered in Texas, distinguishing that case from another case

where the forum state was "clearly the hub of the parties' activities." *Id.* (distinguishing *Miss. Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003 (5th Cir. 1982)).

Shelly, a Pennsylvania resident, opened bank accounts at C&N for the FIC partnerships. ECF No. 34 at 9. All but one of the contact addresses listed on the account opening paperwork for the FIC partnerships were Pennsylvania addresses, the signatories on all accounts were Pennsylvania residents, and those signatories transacted all their business on the accounts from Pennsylvania. *Id.*; ECF No. 34-1 at ¶¶ 14, 15. Thus, the hub of the events in this case with respect to C&N appears to be in Pennsylvania.

Plaintiffs also argue that C&N created and maintained a long-term relationship with Texas through its contracts with the Texas-based FIC partnerships. ECF No. 44 at 8. Plaintiffs assert that contracting with Texas-partnerships over a four-year period and sending and receiving wire transfers to and from Texas satisfies the minimum contacts requirement. *Id.* at 9 (citing *Rotstain v. Trustmark Nat'l Bank*, No. 3:09-cv-2384-N, 2021 WL 3372249 (N.D. Tex. Aug. 3, 2021).

The Court finds *Rotstain* instructive. It also involved a Ponzi scheme—the Stanford Ponzi scheme. *Id.* at *1. There, the court determined that the defendant bank connected with Texas in a meaningful way through the bank's regular communications with Stanford personnel in Houston, trips to Texas to visit Stanford personnel, and the bank's numerous monetary transfers to Stanford accounts. *Id.* at *4. The same depth and quality of contacts, however, are not present here. There is no evidence that C&N maintained regular communications with FIC partners in Texas or made trips to Texas to visit FIC partners. *Compare with Burger King Corp.*, 471 U.S. at 481 (relying in part on defendant's "continuous course of direct communications by mail and by telephone" to determine personal jurisdiction); *MJCM, LLC v. Sky Bank*, No. Civ. A.

11

H-05-0664, 2005 WL 2121549, at *5 (S.D. Tex. Aug. 31, 2009) (determining that personal jurisdiction existed where the parties entered into a long-term agreement requiring extensive interaction between the two companies). And as explained above, the wire transfers alone are insufficient contacts with Texas.

The Court finds that there are insufficient grounds to find that C&N availed itself of the privilege of conducting activities in Texas as required to establish minimum contacts under the Fifth Circuit's three-step analysis. As such, exercising personal jurisdiction over C&N would be improper. Because the personal jurisdiction issue is dispositive, the Court does not address C&N's Rule 12(b)(6) argument.

## IV.  RECOMMENDATION

For the above reasons, it is the **RECOMMENDATION** of the United States Magistrate Judge to the United States District Judge that Gertz and PV Advisors' Motion (ECF No. 24) be **DENIED** and C&N's Motion to dismiss for lack of jurisdiction (ECF No. 34) be **GRANTED**.

## V.  OBJECTIONS

The parties may wish to file objections to this Report and Recommendation. Parties filing objections must specifically identify those findings or recommendations to which they object. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc). Except upon grounds of plain error, failing to object shall further bar the party from

appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas*, 474 U.S. at 150–53; *Douglass*, 79 F.3d at 1428–29.

SIGNED this 28th day of February, 2025.

_____
DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE