# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| **ALEX GOLDOVSKY, et al.** § | |
| § | |
| *Plaintiffs,* § | |
| § | |
| v. § | CASE NO. 6:24-CV-00159-ADA-DTG |
| § | |
| **MAURICIO J. RAULD, et al.** § | |
| § | |
| *Defendants,* § | |

### REPORT AND RECOMMENDATION GRANTING-IN-PART
### MOTION (ECF NO. 25) AND DENYING MOTION (ECF NO. 28)

**TO:   THE HONORABLE ALAN D ALBRIGHT,
        UNITED STATES DISTRICT JUDGE**

This Report and Recommendation is submitted to the Court pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), and Rules 1(d) and 4(b) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. Before the Court is Defendants Timothy B. Gertz and PV Advisors, PLC's Motion to Dismiss for Failure to State a Claim (ECF No. 25), and Defendant Wells Fargo, NA's Motion to Dismiss for Failure to State a Claim (ECF No. 28). After carefully considering the briefs and the applicable law, the Court **RECOMMENDS** that Gertz and PV Advisors' motion be **GRANTED-IN-PART** and **DENIED-IN-PART** and Defendant Wells Fargo's motion be **DENIED**.

### I.     BACKGROUND

This case arises out of an alleged Ponzi scheme perpetrated by Roy Hill, Eric Shelly, and two entities they controlled—Clean Energy Technology Association, Inc. ("CETA") and Freedom Impact Consulting, LLC ("FIC"). ECF No. 1 at 1–2. For over three years, Hill and

Shelly ran an elaborate Ponzi scheme, raising at least $155 million from over 500 investors nationwide. *SEC v. Hill*, No. 6:23-CV-00321-ADA, ECF No. 1 (W.D. Tex. May 3, 2023). Hill and his company, CETA, claimed to have developed a new technology that combined removal and underground storage of carbon dioxide with enhanced oil and gas production. ECF No. 1 at ¶ 36. The technology was a device known as a carbon capture unit ("CCU"). *Id.* But the CCUs did not produce business revenues. *Id.* at ¶ 41. The only CCUs CETA sold were non-working prototypes. *Id.*

Hill and Shelly allegedly funded their scheme through partnerships created by FIC. Plaintiffs contend that FIC registered new partnerships ("FIC partnerships") around the end of each quarter, raised new funds from investors, and used the funds to pay quarterly returns to investors in earlier-created partnerships. *Id.* at ¶ 50. Each FIC partnership sent investors a business plan that allegedly contained untrue statements and omissions of material facts. *Id.* at ¶¶ 60–61.

Plaintiffs contend that they each invested hundreds of thousands of dollars in one or more FIC partnerships because of the defendants' conduct. *Id.* at ¶¶ 7–10. Plaintiffs allege that Gertz and PV Advisors were members of the "Advisory Team" for each FIC partnership. *Id.* at ¶ 60. The business plans for the FIC partnerships identified Gertz and PV Advisors as the partnerships' Certified Public Accounts. *Id.* at ¶ 96. Gertz and PV Advisors allegedly prepared tax forms for the FIC partnerships and provided tax advice to the partnerships and investors. In addition to providing standard tax-related services, Gertz and PV Advisors allegedly appeared on webinars, podcasts, and phone calls to market the FIC partnerships to potential investors. *Id.* at ¶ 113. Plaintiffs also contend that Wells Fargo ignored suspicious account activity—the large sums of money shuffled in and out of the Hill Trust Account maintained at Wells Fargo's Fairfield

branch—despite Wells Fargo's enhanced internal controls aimed at detecting and preventing fraud. *Id.* at ¶¶ 118, 126–148.

Based on this alleged conduct, Plaintiffs filed this putative class action lawsuit against Defendants Gertz, PV Advisors, Wells Fargo, and others. Plaintiffs sued Gertz and PV Advisors for primary and secondary violations of the Texas Securities Act, statutory fraud, common-law fraud, negligent misrepresentation, and knowing participation in breach of fiduciary duty. Plaintiffs also sued Wells Fargo for secondary violations of the Texas Securities Act. Wells Fargo, Gertz, and PV Advisors move to dismiss all claims asserted against them.

## II. LEGAL STANDARD

Defendants Gertz, PV Advisors, and Wells Fargo move under Rule 12(b)(6) to dismiss all of Plaintiffs' claims against them. The law governing their motions is well-known. To survive a motion under Rule 12(b)(6), a complaint need only include sufficient facts to state a plausible claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Facial plausibility exists if the alleged facts create a reasonable inference that the movant is liable for the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court is required to look only at the pleadings unless it converts the motion to dismiss into a motion for summary judgment and allows the parties a reasonable opportunity to present all pertinent information. Fed. R. Civ. P. 12(d).

## III. ANALYSIS

**A. Plaintiffs' Complaint Fails to State a Claim for Statutory Fraud.**

Plaintiffs cannot state a claim for statutory fraud against Defendants Gertz and PV Advisors because the disputed transactions only tangentially relate to real estate. Section 27.01(a) of the Texas Business and Commerce Code creates a cause of action for fraud in a real estate transaction. Tex. Bus. & Comm. Code Ann. § 27.01(a); *Lake v. Cravens*, 488 S.W.3d 867,

891–92 (Tex. App.—Fort Worth 2016, no pet.) (holding that a third-party beneficiary of a real estate contract may sue for statutory fraud under § 27.01, where the immediate benefit of the contract flowed directly to the third-party claimant). To be actionable under § 27.01, the transaction "must actually affect the conveyance of real estate between the parties and cannot merely be tangentially related or a means of facilitating a conveyance of real estate." *Evans v. Wilkins*, No. 14-00-00831, 2001 WL 1340356, at *3–4 (Tex. App.—Houston [14th Dist.] Nov. 1, 2001, no pet.) (collecting cases) (holding that § 27.01 was in applicable to a contract that did not involve the conveyance of particular real estate between the parties); *Tex. Comm. Bank Reagan v. Lebco Construcs., Inc.*, 865 S.W.2d 68, 82 (Tex. App.—Corpus Christi 1993, writ denied) (holding that § 27.01 applies only when the transaction involves the actual conveyance of real estate between the parties).

The Court concludes that these transactions did not include the actual conveyance of real estate between the parties. Plaintiffs and other investors purchased limited partnership interests— interests in various FIC partnerships. ECF No. 1 at ¶¶ 52–55. Limited partnership interests are not real estate. *See Marshall v. Quinn-L Equities, Inc.*, 704 F.Supp. 1384, 1392 (N.D. Tex. 1988) (holding as a matter of law that § 27.01 is inapplicable to the plaintiffs' transactions because the plaintiffs purchased limited partnership interests, not real estate).

Plaintiffs argue that the sale of FIC partnership interests is a real estate transaction because the FIC partnerships involved working interests. ECF No. 38 at 12. Plaintiffs argue that the FIC partnerships' business plans represented that the structure of the partnership agreements with CETA gave each partner a working interest that allowed the partners to qualify for depreciation and depletion deductions. ECF No. 28 at 12. Plaintiffs also contend that the working interest and the interests in mineral leases were part of the bundle of agreements between CETA,

its direct investors, and the FIC partnerships. *Id*. Under the business plans, the section titled "REVENUE SHARES, LEVERAGE AND TAX BENEFIT" explains that the partnership's business operations will give the partnership a "working interest" that justifies various tax benefits. ECF No. 1 at ¶¶ 105–06. Plaintiffs contend that this language establishes that the transactions involve the conveyance of real estate. ECF No. 38 at 12–13.

Plaintiffs' arguments are unpersuasive. Plaintiffs correctly assert that a working interest in an oil and gas lease is an interest in real estate. *Exxon Corp. v. Breezevale, Ltd.*, 82 S.W.3d 429, 436-437 (Tex. App.—Dallas 2002, pet. denied) (citing *Pecos Dev. Corp. v. Hydrocarbon Horizons, Inc.*, 803 S.W.2d 266, 267 (Tex. 1991)). But partnership property is owned by the partnership itself, not by the individual partners. *Young v. Young*, 168 S.W.3d 276, 278 (Tex. App.—Dallas 2005, no pet.). These transactions do not involve the actual conveyance of real estate between the parties. Instead, the transactions conveyed a real estate interest from CETA to the FIC partnerships, not to Plaintiffs or the other investors. Section 27.01(a) is therefore inapplicable, and the Court should dismiss Plaintiffs' statutory fraud claim.

**B. Plaintiffs State a Claim for Primary Violations and Secondary Violations of the Texas Securities Act.**

The Texas Securities Act provides for primary liability for violating the Act. *Brooks v. United Dev. Funding III, L.P.*, No. 4:20-CV-00150-O, 2020 WL 6132230, at *15 (N.D. Tex. Apr. 15, 2020) (citations omitted). A defendant may be held liable for a primary violation of the Act if the defendant made misrepresentations or omissions in connection with a securities transaction. *Id.* To state a claim for primary liability, Plaintiffs must allege that Defendants offered or sold a security "by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under

which they are made, not misleading." Tex. Gov't Code Ann. § 4008.052(a); *Brooks*, 2020 WL 6132230, at *15.

The Texas Securities Act also provides for secondary liability for violating the Act. Secondary liability for another person's securities violation is a derivative claim. *Brooks*, 2020 WL 6132230, at *15 (citing *Sterling Tr. Co. v. Adderley*, 168 S.W.3d 835, 839 (Tex. 2005)). Secondary liability can be established only if there is a primary violation. *Id.* Secondary liability can apply to an "aider" "who directly or indirectly with intent to deceive or defraud or with reckless disregard for the truth of the law materially aids a seller, buyer, or issuer of a security." Tex. Gov't Code Ann. § 4008.055(a). An aider is jointly and severally liable with the primary violator to the same extent, as if the aider was the primary violator. *Id.*; *Highland Cap. Mgmt., L.P. v. Ryder Scott Co.*, 402 S.W.3d 719, 733 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (internal citation omitted).

### 1. Plaintiffs State a Claim for Primary Liability Against Defendants Gertz and PV Advisors.

As a threshold matter, Defendants Gertz and PV Advisors argue they are not sellers or offerors under the Texas Securities Act and cannot be held liable for a primary violation of the statute. ECF No. 25 at 11–12. Gertz and PV Advisors argue that under the current version of the statute, a person must sell a security directly to the purchaser to be considered a "seller." *Id.* at 11. In support of this argument, these defendants cite two cases that interpreted a version of the Act that was repealed by the Texas Legislature in 2019. *See Aubrey v. Barlin*, No. 1:10-CV-076-DAE, 2015 WL 6002260, at *13 (W.D. Tex. Oct. 14, 2015) (interpreting Tex. Rev. Civ. Stat. Art. 581–33, *repealed by* Act of June 7, 2019, 86th Leg., R.S., ch. 491, § 3.01, 2019 Tex. Gen. Laws 1239, 1243); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 534 (S.D. Tex. 2011) (interpreting the same repealed statute).

Current "[c]ase law interpreting the [Act] embraces a relatively expansive conception of the term 'seller.'" *Rotstain v. Trustmark Nat'l Bank*, No. 3:09-CV-2384-N, 2022 WL 179609, at *6 (N.D. Tex. Jan. 20, 2022) (interpreting the current version of the Texas Securities Act). The Act broadly defines "sell" as "any act by which a sale is made," including those who solicit offers to purchase securities by controlling the flow of information to the potential purchaser. Tex. Gov't Code Ann. § 4001.067(d); *Pinter v. Dahl*, 486 U.S. 622, 646 (1988) (holding that § 12 of the federal securities act applies to brokers and other solicitors who control the flow of information to potential purchasers and disseminate material information to investors).[1] The Court finds that Gertz and PV Advisors are sellers as the term is currently defined in and interpreted under the Act.

The *Marshall* case relied on by Gertz and PV Advisors is factually distinguishable. In *Marshall*, the court granted summary judgment in the defendant's favor, finding that the defendant-law firm rendered limited services in connection with the offering of securities and was not a seller under the federal Securities Act. *Marshall v. Quinn-L Equities, Inc.,* 704 F. Supp. 1384, 1391 (N.D. Tex. 1988)). The record established that the law firm assisted the general partner in the preparation of certain memoranda, limited partnership agreements, and related documents, the issuance of certain tax and securities opinions to the limited partnerships, and the preparation of loan documents in connection with financing obtained by the limited partnerships. *Id.* at 1388–89. The court held that the law firm's assistance in the sales of the limited partnership interests was not sufficient to establish that the firm was a seller under § 12 of the Federal

---

[1] Courts often look to the interpretation of federal securities laws as a guide to interpreting the Texas Securities Act. *See e.g., Rotstain*, 2022 WL 179609, at *6; *Highland Cap. Mgmt.*, 402 S.W.3d at 741 (quoting *Pinter*, 486 U.S. at 647).

Securities Act because the firm's participation in the offering or sale of limited partnership interests did not amount to solicitation. *Id.* at 1390.

Unlike the law firm in *Marshall*, Gertz and PV Advisors are sellers under the Texas Securities Act. Although Gertz and PV Advisors allegedly provided similar assistance in the sale of the FIC partnership interests, Plaintiffs also alleged that Gertz assisted in the marketing of the FIC partnerships by appearing on webinars, podcasts, and phone calls to explain the tax benefits to potential investors as the CPA for the FIC partnerships. ECF No. 1 at ¶¶ 113. Gertz and PV Advisors played a more direct role in the solicitation of the partnership interests than the law firm in *Marshall*. For example, Gertz answered specific investors' tax questions via email on May 24, 2022 and May 25, 2022. *Compare* ECF No. 1 at ¶ 114 *with Marshall*, 704 F. Supp. at 1389 (holding that the record lacked competent summary judgment evidence that the law firm had direct communications with investors or potential investors). The Court finds that this conduct amounts to solicitation on the part of Gertz and PV Advisors. Plaintiffs have therefore pled sufficient facts to establish that Gertz and PV Advisors are sellers or offerors under the Texas Securities Act.

The Court is also unpersuaded by Gertz and PV Advisors' argument that Plaintiffs failed to sufficiently allege that any of Gertz or PV Advisors' statements or omissions are untrue or material. *See* ECF No. 25 at 12. To survive a motion to dismiss, Plaintiffs must allege that Defendants made an untrue statement or omission that was material. Tex. Gov't Code Ann. § 4008.052(a); *Brooks*, 2020 WL 6132230, at *15. To do so, Plaintiffs must allege that there is a "substantial likelihood that proper disclosure would have been viewed by a reasonable investor as sufficiently altering the total mix of information made available." *Chesapeake Expl., LLC v.*

*Turtle Top Cove, L.P.*, No. A-08-CA-244-LY, 2008 WL 11411088, at *4 (W.D. Tex. Oct. 24, 2008) (citation omitted). The Court finds that Plaintiffs have sufficiently done so.

While the Court agrees that Plaintiffs do not explain how the Schedules K-1 that were distributed to partners were false or misleading, Plaintiffs specifically detail each misrepresentation and omission contained in the FIC partnership business plans. ECF No. 1 at ¶¶ 61–84. Plaintiffs also allege that the statements in the business plans falsely represented that investor funds were used to manufacture and place CCUs when those funds were actually used to pay earlier investors their promised returns. ECF No. 1 at ¶ 69. Plaintiffs' allegations are sufficient to allow the Court to conclude that a reasonable investor would have viewed proper disclosure as sufficiently altering the total mix of information made available.

**2. Plaintiffs State a Claim for Secondary Liability Against Defendants Gertz, PV Advisors, and Wells Fargo.**

To state a claim for aiding and abetting under the Texas Securities Act, Plaintiffs must allege that (1) there was a primary violation of the Act (by Hill or Shelly), (2) Defendants had a "general awareness" of their role in the violation, (3) Defendants gave "substantial assistance" to the violation, and (4) Defendants intended to deceive Plaintiffs or acted with "reckless disregard" for the truth or the law. *Fundient, LLC v. Johnson Controls, Inc.*, No. 1:22-CV-00284, 2023 WL 2697760, at *9 (W.D. Tex. Jan. 11, 2023), *report and recommendation adopted*, No. 1:22-CV-284-RP, 2023 WL 2709707 (W.D. Tex. Mar. 29, 2023) (listing the elements of a secondary liability claim under the Texas Securities Act). Defendants Gertz, PV Advisors, and Wells Fargo all argue that Plaintiffs did not allege sufficient facts establishing that these defendants (1) provided substantial assistance to Hill and Shelly, or (2) were subjectively aware that Hill and Shelly were engaging in a Ponzi scheme. ECF No. 25 at 15; ECF No. 28 at 5.

### i. Defendants were Subjectively Aware of Hill and Shelly's Actions.

Plaintiffs' allegations are sufficient to create a plausible inference that Defendants were subjectively aware that their respective dealings with Hill, Shelly, FIC, and CETA were part of the overall improper scheme. Plaintiffs allege that Gertz and PV Advisors knew that the interests in the FIC partnership were unregistered securities. ECF No. 1 at ¶¶ 156, 165. Plaintiffs also allege that Gertz and PV advisors knew there were no revenues from leasing the CCUs and no such revenues would fund distributions to the investors despite the fact that Hill, Shelly, CETA, and FIC were representing the opposite to investors. *Id.* at ¶ 81. The Court finds that Plaintiffs' allegations are sufficient to establish that Gertz and PV Advisors were subjectively aware of the underlying primary violations of the Act.

As to Wells Fargo, Plaintiffs allege that Wells Fargo shuffled money to and from Hill's trust accounts, which were maintained at Well Fargo. *Id.* at ¶ 32, 118. Wells Fargo asserts that Plaintiffs' use of "Bank Defendants" to refer collectively to Wells Fargo and C&N Bank is fatal. ECF No. 28 at 14. While Plaintiffs group the banks together as the "Bank Defendants" at times, Plaintiffs make specific factual allegations as to Wells Fargo that are sufficient to create a plausible inference that Wells Fargo was subjectively aware of the underlying primary violations of the Act. Plaintiffs specifically allege that Wells Fargo collects and maintains information about its customers and their banking behavior to detect and prevent money laundering and fraud. ECF No. 1 at ¶ 126. Plaintiffs pled that Wells Fargo collects information about new business account clients, including the purpose and nature of the business, anticipated activity in the account, and services commonly used by the customer to create an initial client profile and assign a compliance-related risk rating to the profile. *Id.* at ¶ 126–27.

Plaintiffs' Complaint also details the internal controls maintained by Wells Fargo to ensure ongoing compliance with federal laws and to prevent and detect money laundering. *Id.* at ¶ 128. Plaintiffs allege that Wells Fargo enhanced its internal controls just before the Ponzi scheme began. *Id.* at ¶ 136. These internal controls include monitoring wire transfers between $25,000 and $100,000. *Id.* at ¶ 143. A Wells Fargo customer service manager who approves outgoing wire transfers conducts a secondary review of the wire transfers. *Id.* Wells Fargo requires wire transactions above $100,000 to undergo additional approval by a regional employee, and transactions over $500,000 require authorization from the branch manager. *Id.* Plaintiff alleges that despite all this, Wells Fargo accepted millions of dollars into the accounts used to operate the Ponzi scheme. *Id.* at ¶ 150. Plaintiffs also allege that based on the pattern of cash flows into the accounts maintained at Wells Fargo, Wells Fargo knew that Hill was engaging in atypical business transactions that amounted to a Ponzi scheme. *Id.* at ¶ 118.

Wells Fargo argues that the *Sterling Trust* case is dispositive of Plaintiffs' secondary liability claim against it. ECF No. 28 at 6. The Court disagrees. In *Sterling Trust*, the plaintiffs did not argue that the defendant knew of the underlying pyramid scheme. 168 S.W.3d 835, 838–39 (Tex. 2005). The plaintiffs argued that the defendant's failure to comply with its own internal procedures facilitated the pyramid scheme. *Id.* The Texas Supreme Court reversed the judgment for the plaintiffs because the trial court failed to instruct the jury that an alleged aider cannot be held secondarily liable unless it had a general awareness of its role in the primary violation. *Id.* at 842–43. The court did not dismiss the plaintiffs' secondary liability claims for failure to state a claim. Instead, the claim was tried to a jury that was improperly instructed on the law. *Id.* at 843 (holding that the failure to instruct the jury on subjective awareness was reasonably calculated to, and probably did, cause the rendition of an improper judgment (citation omitted)). Moreover, the

jury found that the defendant "did not know, and could not have known, of the particular misrepresentations or omissions made by" the primary violators. *Id.* Wells Fargo is effectively asking the Court to prematurely dismiss Plaintiffs' sufficiently pled claims for secondary liability at the 12(b)(6) stage. Plaintiffs have pled enough facts to allow the Court to conclude that Wells Fargo was subjectively aware of the underlying primary violations of the Texas Securities Act.

        ii.        **Defendants Provided Substantial Assistance to Hill and Shelly.**

Defendants also argue that Plaintiffs fail to establish that Defendants materially aided the underlying securities fraud by providing substantial assistance to Hill, Shelly, CETA, or FIC. ECF No. 25 at 15; ECF No. 28 at 13. As Defendants note, engaging in only ministerial duties or routine services is not substantial assistance. ECF No. 25 at 15 (citing *Kneese v. Pershing, LLC*, No. 3:10-CV-1908-N, 2012 WL 13019677, at *4 (N.D. Tex. Nov. 14, 2012)); ECF No. 28 at 13 (citing the same). But Plaintiffs factual allegations, when taken as true, create a plausible inference that Defendants were engaged in more than just ministerial duties or routine services. As explained above, Gertz and PV Advisors helped market the FIC Partnerships by appearing on webinars, podcasts, and phone calls to explain tax benefits. ECF No. 1 at ¶ 113. This conduct goes beyond merely providing ministerial duties or routine services to FIC.

As to Wells Fargo, Plaintiffs allege that Wells Fargo serviced Hill's accounts for years. ECF No. 32 at 8. In *Rotstain*, the court held on a motion for summary judgment that evidence that two banks continued to serve the Stanford accounts creates a genuine fact issue as to whether the banks substantially assisted the Stanford Ponzi scheme. *Rotstain*, 2022 WL 179609, at *11. As the court explained, victims of financial fraud who bring claims against banks that served wrongdoers typically must rely on circumstantial evidence of "suspicious" behavior or "red flags" that the banks ignored. *Id.* A plaintiff is not required to show knowledge of the Ponzi scheme itself to establish a defendant's scienter as an aider and abettor. *Id.* The evidence need

only suggest a subjective awareness of material misstatements made in connection with the sales of securities. *Id.*

The Court finds that Plaintiffs' allegations as to Wells Fargo's maintenance of Hill's accounts creates a plausible inference that Wells Fargo ignored suspicious behavior and red flags involving the accounts and subjectively perceived the risk that its services were contributing to an overall improper scheme. The Court should deny the motions to dismiss Plaintiffs' claims for secondary liability under the Act. Because Plaintiffs' allegations against Wells Fargo do not fail due to "group pleading" and Plaintiffs state a claim for secondary liability against Wells Fargo, the Court finds it unnecessary to analyze Plaintiffs' alternative request for leave to amend its allegations against Wells Fargo. ECF No. 32 at 17.

## C. Plaintiffs State Claims for Common-law Fraud and Negligent Misrepresentation against Defendants Gertz and PV Advisors.

Gertz and PV Advisors argue that Plaintiffs' Complaint fails to state a claim for common-law fraud and negligent misrepresentation. ECF No. 25 at 17–19. These defendants also argue that the complaint fails to state a claim for fraud by non-disclosure. *Id.* at 17.

The Court finds that the complaint adequately states a claim for common-law fraud and negligent misrepresentation. As for fraud by non-disclosure, Plaintiffs clarify that they have not asserted such a claim. ECF No. 38 at 14. Instead, the allegations Gertz and PV Advisors cited as insufficient to maintain a claim for fraud by non-disclosure were allegations relating to Plaintiffs' secondary liability claims under the Texas Securities Act. *Id.*

Common-law fraud and negligent misrepresentation are similar, but negligent misrepresentation, unlike common-law fraud, "does not require knowledge of the falsity or reckless disregard of the truth or falsity of the representation at the time it was made." *Larsen v. Carlene Langford & Assocs., Inc.*, 41 S.W.3d 245, 250 (Tex. App.—Waco 2001, no pet.) (citing

*Milestone Props., Inc. v. Federated Metals Corp.*, 867 S.W.2d 113, 119 (Tex. App.—Austin 1993, no writ). To state a claim for common-law fraud, Plaintiffs must allege that (1) Gertz and PV Advisors made a material representation that was false, (2) they knew the representation was false or made it recklessly as a positive assertion with no knowledge of its truth, (3) they intended to induce Plaintiffs to act on the representation, and (4) Plaintiffs actually and justifiably relied on the representation and suffered injury as a result. *W. Loop Hosp., LLC v. Houston Galleria Lodging Ass'n*, 649 S.W.3d 461, 484 (Tex. App.—Houston [1st Dist.] 2022, no pet.). To state a claim for negligent misrepresentation, Plaintiffs must allege (1) Gertz and PV Advisors made a representation in the course of their business, or in a transaction in which they have a pecuniary interest, (2) Gertz and PV Advisors supplied "false information" for the guidance of others in their business, (3) they did not exercise reasonable care or competence in obtaining or communicating the information; and (4) Plaintiffs suffered pecuniary loss by justifiably relying on the representation. *Gen. Elec. Cap. Corp. v. Posey*, 415 F.3d 391, 395–96 (5th Cir. 2005) (reversing the district court's dismissal of a negligent misrepresentation claim under Texas law).

Gertz and PV Advisors argue Plaintiffs' fraud claim fails because Plaintiffs do not sufficiently allege that (1) Gertz and PV Advisors representations were false, (2) these defendants knew the representations were false or made the representations recklessly, and (3) the Plaintiffs relied on the representations. ECF No. 25 at 17. Gertz and PV Advisors also argue that the Court should dismiss the negligent misrepresentation claim because Plaintiffs failed to sufficiently allege that any representations made by Gertz or PV Advisors were false. *Id.* at 19.

1. **Plaintiffs Sufficiently Allege that Gertz and PV Advisors' Representations were False when Made.**

As explained above, Plaintiffs specifically detail each misrepresentation and omission contained in the FIC partnership business plans. ECF No. 1 at ¶¶ 61–84. Plaintiffs also allege that the statements in the business plans falsely represented that investor funds were used to manufacture and place CCUs under leases with natural gas producers when in fact they were used to pay earlier investors their promised returns. ECF No. 1 at ¶ 69. These allegations are sufficient to establish that Gertz and PV Advisors' representations were false when made.

2. **Plaintiffs Sufficiently Allege that Gertz and PV Advisors Knew the Representations were False or Made these Representations Recklessly.**

Plaintiffs allege that Gertz and PV Advisors, "as the accountants for the FIC Partnerships," "knew when the partnerships were established and when [the partnerships] started receiving investor funds." ECF No. 1 at ¶ 101. Plaintiffs also allege that Gertz and PV advisors knew there were no revenues from leasing the CCUs and no such revenues would fund distributions to the investors even though the Business Plans bearing their names represented the opposite to investors. *Id.* at ¶ 81. The Court finds that these allegations are sufficient to survive a motion to dismiss.

3. **Plaintiffs Sufficiently Allege that they Relied on Gertz and PV Advisors' Representations.**

Plaintiffs allege that "[b]y falsely stating in the Business Plans that investor returns were funded by revenues from leasing the CCUs when in fact they were funded by later investments, [Gertz and PV Advisors] successfully solicited the purchase of partnership interests." *Id.* at ¶ 81. Plaintiffs allege that they relied on the misrepresentations contained in the business plans when purchasing FIC partnership interests. *Id.* at ¶ 232. The Court finds that Plaintiffs' complaint

sufficiently alleges that they relied on the representations believing that investors returns were funded by revenues from leasing the CCUs when purchasing interests in the FIC partnerships.

The Court therefore should deny the motion to dismiss Plaintiffs' common-law fraud and negligent misrepresentation claims against Defendants Gertz and PV Advisors.

### D. Plaintiffs State a Claim against Defendants Gertz and PV Advisors for Knowing Participation in Breach of Fiduciary Duty.

Gertz and PV Advisors challenge Plaintiffs' allegations of knowing participation in breach of fiduciary duty. They argue that Plaintiffs fail to state a claim because Plaintiffs fail to plausibly allege how Gertz and PV Advisors were aware that they were participating in the breach of the fiduciary duty FIC owed to investors. ECF No. 25 at 20.

Under Texas law, a third party can be held jointly liable with a fiduciary for breach of the fiduciary duty where the third party knowingly participated in the breach. *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007) (citing *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (1942)). To state a claim for knowing participation in a breach of fiduciary duty, Plaintiffs must allege: (1) the existence of a fiduciary relationship; (2) that Gertz and PV Advisors knew of the fiduciary relationship; and (3) that Gertz and PV Advisors were aware they were participating in the breach of that fiduciary relationship. *Id.*

FIC was the managing partner of each FIC partnership and owed fiduciary duties to the partnerships and the other partners. ECF No. 1 at ¶¶ 193, 194. Plaintiffs allege that FIC breached these fiduciary duties to the partners in the FIC partnerships, which resulted in injury to the partners, including Plaintiffs. ECF No. 1 at ¶ 196. As explained in the Court's analysis of the subjective awareness element of secondary liability under the Texas Securities Act, Plaintiffs' allegations are sufficient to allow the Court to plausibly conclude that Gertz and PV Advisors were aware they were participating in FIC's wrongdoing—here, the breach of FIC's fiduciary

duties to Plaintiffs and other investors. The Court therefore should deny the motion to dismiss Plaintiffs' knowing participation in breach of fiduciary duty claim against Gertz and PV Advisors.

## IV.  CONCLUSION

The undersigned **RECOMMENDS** that Defendants Gertz and PV Advisors' motion to dismiss (ECF No. 25) be **GRANTED-IN-PART** and **DENIED-IN-PART**.

The undersigned recommends that the Court **DISMISS** Plaintiffs' statutory fraud claims against Gertz and PV Advisors for failure to state a claim.

The undersigned further recommends that the Court **DENY** the Motion as to the following claims against Gertz and PV Advisors:

(1) Primary liability under the Texas Securities Act;

(2) Secondary liability under the Texas Securities Act;

(3) Common-law fraud;

(4) Negligent misrepresentation; and

(5) Knowing participation in breach of fiduciary duty.

The undersigned finally **RECOMMENDS** that the Court **DENY** Wells Fargo's motion as to Plaintiffs' secondary liability claim under the Texas Securities Act against Wells Fargo (ECF No. 28).

## V.  OBJECTIONS

The parties may wish to file objections to this Report and Recommendation. Parties filing objections must specifically identify those findings or recommendations to which they object. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc). Except upon grounds of plain error, failing to object shall further bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas*, 474 U.S. at 150–53; *Douglass*, 79 F.3d at 1415.

**SIGNED** this 28th day of May, 2025.

_____
DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE