# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| ALEX GOLDOVSKY, et al., § | |
| § | |
| *Plaintiffs,* § | |
| § | |
| v. § | CASE NO. 6:24-CV-00159-ADA-DTG |
| § | |
| MAURICIO J. RAULD, et al., § | |
| § | |
| *Defendants,* § | |

### REPORT & RECOMMENDATION TO DENY THE PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (DKT. NO. 71)

**TO:** **THE HONORABLE ALAN D ALBRIGHT,**
       **UNITED STATES DISTRICT JUDGE**

This Report and Recommendation is submitted to the Court pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), and Rules 1(d) and 4(b) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. Before the Court is the plaintiffs, Alex Goldovsky, Glynn Frechette, John Krupey, and Kristin Scharf's motion for class certification (Dkt. No. 71). The motion is fully briefed, and on February 18, 2025, the Court heard arguments from the parties. After careful consideration of the briefs, arguments, and the applicable law, the Court **RECOMMENDS** that the motion for class certification be **DENIED**.

## I.   BACKGROUND

This putative class action arises out of an alleged Ponzi scheme perpetrated by Roy Hill, Eric Shelly, and two entities they controlled—Clean Energy Technology Association, Inc. ("CETA") and Freedom Impact Consulting, LLC ("FIC"). Dkt. No. 1 at 1–2. For over three years, Hill and Shelly ran an elaborate Ponzi scheme, raising at least $155 million from over 500

investors nationwide. *SEC v. Hill*, No. 6:23-CV-00321-ADA, Dkt. No. 1 (W.D. Tex. May 3, 2023). Hill and his company, CETA, claimed to have developed a new technology that combined removal and underground storage of carbon dioxide with enhanced oil and gas production. Dkt. No. 1 at ¶ 36. The technology was a device known as a carbon capture unit. *Id*. But the carbon capture units did not produce business revenues. *Id.* at ¶ 41. The only units that CETA sold were non-working prototypes. *Id.*

Hill and Shelly allegedly funded their scheme through partnerships created by FIC. The plaintiffs contend that FIC registered new partnerships ("FIC partnerships") around the end of each quarter, raised new funds from investors, and used the funds to pay quarterly returns to investors in earlier-created partnerships. *Id.* at ¶ 50. Each FIC partnership sent investors a business plan that allegedly contained untrue statements and omissions of material facts. *Id.* at ¶¶ 60–61. In May 2023, the United States Securities and Exchange Commission sued Hill, Shelly, and the entities they controlled. *SEC v. Hill*, No. 6:23-CV-00321-ADA, Dkt. No. 1 (W.D. Tex. May 3, 2023). The Court enjoined those defendants (collectively, the "Receivership Defendants"), appointed a receiver, and enjoined others from asserting claims against them. *Id.* at Dkt. No. 8. As a result, the plaintiffs in this case sued FIC's lawyer, accountant, and their firms (collectively, the "Advisory Team Defendants"), in addition to the two banks that allegedly provided the bank accounts and wire transfers that enabled the Ponzi Scheme. Dkt. No. 71 at 3.

The plaintiffs allege that they each invested hundreds of thousands of dollars in one or more FIC partnerships because of the Receivership Defendants' and the Advisory Team Defendants' material misrepresentations and omissions. Dkt. No. 1 at ¶¶ 7–10. Based on this conduct, the plaintiffs filed this putative class action lawsuit against the defendants alleging that the defendants violated the Texas Securities Act, aided and abetted violations of the Texas

Securities Act, and knowingly participated in breach of fiduciary duty. The plaintiffs also sued the Advisory Team defendants for fraud and negligent misrepresentation.

All parties named in the complaint appeared and presented evidence and argument at the February 18, 2025 hearing. Shortly after the hearing, the Court dismissed the plaintiffs' claims against Citizens & Northern Bank because the Court lacked personal jurisdiction over it. Dkt. No. 96 at 12 *report & recommendation adopted,* Dkt. No. 100. The Court subsequently dismissed the plaintiffs' statutory fraud claims against Defendants Gertz and PV Advisors—all other claims and defendants remain pending before the Court. Dkt. No. 103 at 17 *report & recommendation adopted,* Dkt. No. 107.

## II.     ANALYSIS

The plaintiffs' motion for class certification is governed by Rule 23 of the Federal Rules of Civil Procedure. Class certification is only proper if the Court is satisfied that "after *rigorous analysis*," the requirements of Rule 23 are met. *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 545 (5th Cir. 2020) (emphasis in original) (vacating the district court's certification order because the court failed to engage in a rigorous analysis when certifying the class). It is not enough for the Court to "review a complaint and ask whether, taking the facts as the party seeking the class presents them, the case seems suitable for class treatment." *Id.* at 546 (citation omitted). The merits of the plaintiff's underlying claims may be considered only to the extent they are relevant to determining whether Rule 23's requirements for class certification are met. *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 466 (2013) (citations omitted).

To obtain class certification, the plaintiffs must demonstrate that the four prerequisites under Rule 23(a) are satisfied. *Id.* at 460. First, the plaintiffs must show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Second, the

plaintiffs must demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Third, the plaintiffs must demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Finally, the plaintiffs must establish that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The plaintiffs must also demonstrate that the action can be maintained under Rule 23(b)(1), (2), or (3). *Amgen Inc.*, 568 U.S. at 460.

The plaintiffs move for class certification under Rule 23(b)(3). Dkt. No. 71 at 1. Certification under Rule 23(b)(3) is appropriate only when the Court finds that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The plaintiffs, as the party seeking class certification, bear the burden of establishing that the requirements of Rule 23 are satisfied and the case, therefore, is fit for class-wide resolution. *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 253 (5th Cir. 2020).

After conducting a rigorous analysis under Rule 23, the Court finds that the plaintiffs have failed to demonstrate that this case is fit for class-wide resolution. As explained below, the record demonstrates that common questions of law and fact do not predominate over individualized issues, and the Court will not analyze the other requirements for class certification.[1]

---

[1] At the hearing and in their briefing, the parties raised choice of law issues that the Court does not need to analyze to resolve the instant motion. *Compare* Dkt. No. 71, at 11–12 *with* Dkt. No. 77, at 6. Even if the Texas Securities Act applies to all proposed class members' claims, the predominance issue is dispositive of the plaintiffs' motion for class certification. *See Turk*, 2019 WL 13074697, at *2 n.3 (deferring determination of whether the Texas Securities Act applies to claims of nonresidents where the Court determined the predominance requirement was not satisfied for other reasons).

The putative plaintiff class includes more than 700 investors from forty-seven states and territories who purchased CETA investment contracts in connection with the purchase of CETA CCUs or interests in any of the FIC partnerships. Dkt. No. 71 at 5. The plaintiffs contend that this case is well suited for maintenance as a class action under Rule 23(b)(3). They assert that the question of whether they relied on certain misrepresentations does not defeat class certification under Rule 23(b)(3) for two reasons. Dkt. No. 71 at 15–17. First, the plaintiffs argue that their claims under the Texas Securities Act do not require proof of reliance. *Id.* at 15–16. Second, the plaintiffs argue that their fraud, negligent misrepresentation, and knowing participation in breach of a fiduciary duty claims are all based on nondisclosure, which carries a presumption of reliance. *Id.* at 16–17. The plaintiffs also argue that they relied on uniform written presentations and business plans for the FIC partnerships. *Id.* at 8–9. The plaintiffs therefore contend that the issue of reliance will not present substantial individualized issues. The Court disagrees.

The plaintiffs claim that the defendants aided and abetted Hill and Shelly's primary violations of the Texas Securities Act in violation of § 4008.055(c) of the Texas Government Code. Dkt. No. 1 ¶¶ 218–22. A claim under the Texas Securities Act does not require proof of the buyer's reliance on misrepresentations or omissions, but it does require a showing of causation. *Rotstain v. Trustmark Nat'l Bank*, No. 3:09-CV-2384-N, 2022 WL 179609, at *8 (N.D. Tex. Jan. 20, 2022) (citation omitted). The plaintiffs also assert a common law claim for knowing participation in breach of fiduciary duty, which rests on the same factual grounds as the aiding and abetting claim under the Texas Securities Act. Dkt. No. 1, ¶¶ 226–53. The plaintiffs' claims against the Advisory Team Defendants for fraud and negligent misrepresentation require proof of the buyer's reliance on misrepresentation or omissions. *See Grant Thornton LLP v. Prospect*

*High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010) (citations omitted) (analyzing the elements of fraud and negligent misrepresentation).

**A. The presumption of reliance under *Affiliated Ute* does not apply to the facts of this case.**

The plaintiffs argue that their fraud and negligent misrepresentation claims are based on the defendants' "failure to disclose that (1) there were no operating CCUs, (2) CCUs were not leased to energy companies, (3) there were no revenues from leasing the CCUs, (4) there were no expenses or mineral working interests to support the promised tax deductions, and (5) all returns paid to investors came from money CETA and the FIC Partnerships received from the investors themselves and from later investors." Dkt. No. 71 at 16. The plaintiffs contend that they are not required to provide positive proof of reliance under *Affiliated Ute Citizens of Utah*. *Id.* (generally citing *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972)).

The plaintiffs' argument is unavailing. *Affiliated Ute* involved claims under federal securities laws—the Securities Exchange Act of 1934 and Rule 10b–5 of the Securities and Exchange Commission. *Id.* at 140. In *Affiliated Ute*, to induce the plaintiffs to sell their stock in Ute Distribution Corp., the defendants failed to disclose that they were in a position to financially gain from the plaintiffs' sales of stock and that the shares were selling for a higher price in the non-Native American market. *Id.* at 153. The defendants did not make a positive representation or recommendation to the sellers of the stock. *Id.* The Court explained that the defendants had an affirmative duty under the federal Securities Act to disclose these material facts to the sellers. *Id.* The Court held that, under the facts of that case, the plaintiffs were not required to establish positive proof of reliance where the plaintiffs established that the facts withheld were "material in the sense that a reasonable investor might have considered them important in the making of this decision." *Id.* at 153–54. The Court explained that the defendants

could not "stand mute while they facilitate[d]" the plaintiffs' sales to those seeking to profit in the non-Native American market. *Id.* at 153. The plaintiffs here, however, allege numerous affirmative misrepresentations made by Hill, Shelly, and the Advisory Team Defendants. *See, e.g.*, Dkt. No. 1 ¶¶ 38, 61, 62 ("The *SEC v. Hill* Defendants and the Advisory Team Defendants sponsored and made the untrue statements in the Business Plans. They also omitted material facts in the Business Plans," and "[t]he *SEC v. Hill* Defendants and the Advisory Team Defendants stated that investor funds would be used to build and deploy CCUs."). The plaintiffs explicitly allege that the Advisory Team Defendants "made false misrepresentations," "they also omitted to state material facts," and they "made false promises" to the plaintiffs. *Id.* ¶¶ 227–29. The plaintiffs then attempt to turn those misrepresentations into an omission or "failure to disclose" the truth. If allowed to do so, then reliance would never be a requirement to recover for fraud or negligent misrepresentation in any case. Every positive misrepresentation can be phrased as a failure to disclose the truth. The Court therefore finds that the plaintiffs are required to prove reliance as an element of their fraud and misrepresentation claims.

**B. The causation and reliance elements of the plaintiffs' claims raise substantial individualized issues that defeat class certification under Rule 23(b)(3).**

The plaintiffs' claims under the Texas Securities Act require proof of causation and their fraud and negligent misrepresentation claims require proof of reliance. *Rotstain*, 2022 WL 179609, at *8 (citation omitted); *Grant Thornton LLP*, 314 S.W.3d at 923 (citations omitted). Analyzing causation and reliance commonly raises substantial individualized issues. *See, e.g., Turk v. Pershing LLC*, No. 3:09-CV-2199-N, 2019 WL 13074697, at *2 (N.D. Tex. Mar. 21, 2019) (denying motion for class certification where the plaintiffs failed to establish uniformity of oral representations regarding claim for aiding and abetting violations of the TSA).

According to the Advisory Committee's notes to Rule 23(b)(3) and Fifth Circuit precedent, a fraud case cannot be certified as a class action "if there was material variation in the representation made or in the kinds or degrees of reliance by the person to whom they were addressed." Fed. R. Civ. P. 23(b)(3) advisory committee's note to 1966 amendment; *see also Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 (5th Cir. 1996) (citing *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880 (5th Cir. 1973)) (holding in part that the district court erred in certifying a fraud class action where individual reliance would potentially be an issue).

To prevent a class action from becoming a series of individual trials, the predominance analysis requires (1) identifying the substantive issues that will control the outcome; (2) assessing which issues will predominate; and (3) determining whether the issues are common to the class. *Chavez*, 108 F.4th at 316 (citing *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003)) (affirming the district court's certification of a class action where a common question of whether the defendant was a functional fiduciary as to each challenged action unequivocally dominates any potential individualized causation inquiries). The predominance requirement is more demanding than the commonality requirement because it tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Id.* (citations omitted).

In *McManus v. Fleetwood Enterprises*, the Court found that fact questions relating to the plaintiffs' reliance were fatal to a Rule 23(b)(3) class for claims of fraudulent concealment and negligent misrepresentation. 320 F.3d 545, 550 (5th Cir. 2003) (district court erred in certifying a class where fraud and negligent misrepresentation claims required a showing of reliance because reliance would vary from plaintiff to plaintiff, depending on the circumstances of the sale). The same is true of the instant plaintiffs' negligent misrepresentation and fraud claims. Reliance will vary from plaintiff to plaintiff depending on the circumstances surrounding their investments in

the FIC partnerships. The burden is on the plaintiffs to show that all differing variables surrounding their investments are sufficiently uniform to justify maintenance as a class action. *Id.* at 550.

i. **The Court is not convinced that the misrepresentations made to each plaintiff were uniform throughout the class.**

Whether the defendants aided and abetted Hill and Shelly's primary violations of the Texas Securities Act is a commonly contested issue that will control the outcome of the case. But proof of a primary violation by Hill and Shelly would raise substantial individualized issues because the plaintiffs must offer evidence of misleading statements that induced them to purchase the securities. As for the plaintiff's fraud and negligent misrepresentation claims, based on the record before it, the Court finds that there is likely a material variation in the plaintiffs' degrees of reliance on Hill, Shelly, and the Advisory Team Defendants' misrepresentations. Such individualized issues would therefore defeat the cohesiveness of the proposed class.

Where written materials containing omissions or misrepresentations were provided to and relied upon by all potential class members, there are common, uniform issues of reliance and class treatment is appropriate. *Mulcahey v. Petrofunds, Inc.*, 79 F.R.D. 272, 278 (S.D. Tex. 1978) (collecting cases) (granting class certification pending full merit discovery on reliance while indicating decertification if class-wide discovery establishes reliance on the part of purported class members varies substantially from that of the named plaintiffs). But "where there are oral misrepresentations and the misrepresentations differ between the plaintiffs, there are varying issues of reliance and class treatment is inappropriate." *Id.* (collecting cases).

The plaintiffs have not demonstrated that the representations made to each plaintiff were uniform throughout the class. This case involves both written statements containing alleged

misrepresentations and omissions and certain alleged oral misrepresentations. *See, e.g.*, Dkt. No. 1 ¶¶ 61 (alleged untrue statements contained in written business plans), 176–77 (alleged oral misrepresentations made over the phone) "[T]he key concept in determining the propriety of class action treatment is the existence or non-existence of material variations in the alleged misrepresentations." *Grainger v. State Sec. Life Ins. Co.*, 547 F.2d 303, 307 (5th Cir. 1977). It is rare, but not impossible for oral misrepresentations to be uniform. For example, a standardized sales pitch to each plaintiff made by all the company's salespeople would be a uniform oral misrepresentation made across the proposed class. *See id.*

The plaintiffs argue that the business plans and sales presentations that CETA and FIC provided to investors were largely identical. Dkt. No. 71 at 8. The plaintiff argues that because these presentations and business plans all made common representations about CETA's carbon capture units, how the carbon capture units would be leased and operated, and how the operations would generate distributions and tax deductions for the investors, class certification is proper. *Id.* at 9. The defendants argue that various oral representations were made to members of the proposed class, defeating the predominance factor. *See, e.g.*, Dkt. No. 81 at 11.

In its response, C&N Bank[2] specifically details the various oral representations that the plaintiffs received. Dkt. No. 81 at 12–14. The plaintiffs each testified that they engaged in various oral conversations that influenced their decisions to invest in a FIC partnership. Shelly explained all the elements of the investment to Plaintiff Goldovsky during a phone call on March 24, 2022. Dkt. No. 82 at App. 35 (Goldvosky Dep. at 76:2–11 ("Eric Shelly on the phone call explained to me in depth all the elements of the investments.")). Shelly told the named plaintiffs

---

[2] Though C&N is no longer a party, the Court considers C&N's briefings and arguments as part of the class certification record because the evidence was submitted to the Court before C&N was dismissed from this case.

that CETA has a contract with Exxon in individual oral conversations. *Id.* at App. 24, 75, 94, 123. Plaintiff Krupey told Goldovsky that CETA had a lease with Exxon over a phone call. *Id.* at App. 16; *see also* Dkt. No. 1 ¶¶ 176–78. Plaintiffs Frechette and Scharf had a conference all with Shelly and their personal CPA to discuss the tax implications of their investments. *Id.* at App. 57-59, 69. Plaintiffs Krupey, Frechette, and Scharf received special permission from Shelly and FIC to invest below the minimum required by the offering documents. Dkt. No. 81 at 12. While the business plans are largely identical, the plaintiffs received individualized oral representations, and there is no evidence to suggest that these representations were uniform throughout the class. For example, the CC6 Shares 2022 LP Business Plan does not refer to CETA's contract with Exxon, so the Court cannot determine whether every member of the proposed class received and relied on this misrepresentation. *See* Dkt. No. 71-1 at 212–228 (CC6 Shares 2022 LP Business Plan). The record demonstrates that the named plaintiffs received representations beyond what is contained in the FIC partnership business plans. *Cf. with Gyarmathy & Assoc., Inc. v. TIG Ins. Co.*, No. 3:02-CV-1245, 2003 WL 21339279, *3 (N.D. Tex. June 3, 2003) (holding that common issues of fact did not predominate where some potential class members received representations from their brokers not contained in the flat dividend proposals provided to all putative class members). The plaintiffs bear the burden of demonstrating that all these variances are sufficiently uniform to justify class treatment. *McManus*, 320 F.3d at 550 (concluding the district court abused its discretion in finding questions of fact common to the class were predominant under Rule 23(b)(3) with respect to the named plaintiffs' claims for fraudulent inducement and negligent misrepresentation).

The plaintiffs also argue that they relied on a single overarching omission—that the FIC partnerships were a Ponzi scheme—which binds the class together. Dkt. No. 85 at 6–7. The

Court disagrees. Because that omission was made in a variety of differing contexts, the fact that, at a very abstract level, the plaintiffs relied on the common omission that the partnerships were part of a Ponzi scheme, does not satisfy the predominance requirement under Rule 23(b)(3). *See Rotstain*, 2017 WL 11662671, at *2 ("Even assuming that Plaintiffs are correct in asserting that every class member's claim is predicated on the sole, common omission that SIBL was a Ponzi scheme, this omission was made in a variety of differing contexts.").

ii. **The Court finds that the plaintiffs relied on the misrepresentations to various degrees.**

Not only did the plaintiffs receive various oral representations relating to their investments in the FIC partnerships, but the plaintiffs also relied on different materials and information in making his or her investment decisions. C&N Bank's response also details the various communications and interactions that the named plaintiffs testified to—all of which allegedly impacted their investment decisions. Dkt. No. 81, 5–8, 10–23. C&N Bank attached a chart summarizing the information that each plaintiff relied on:

|  | Alex Goldovsky | Jack Krupey | Glynn Frechette | Kristin Scharf |
|---|---|---|---|---|
| Prior Relationship with Eric Shelly | ✗ | ✓ | ✗ | ✗ |
| Calls with Eric Shelly | ✓ | ✓ | ✓ | ✓ |
| Calls with Emily Niebuhr | ✗ | ✗ | ✓ | ✓ |
| Calls with Mark Livingston | ✓ | ✗ | ✗ | ✗ |
| Calls with John Harasin | ✗ | ✓ | ✗ | ✗ |
| Calls with Rowan Shelly | ? | ✗ | ✓ | ✓ |
| Calls with Jim Vilt | ✗ | ✗ | ✗ | ✗ |
| Calls with Jack Krupey | ✓ | N/A | ✓ | ✗ |
| Calls with Personal Investment Advisor | ✗ | ✗ | ✓ | ✓ |
| Calls with Personal CPA | ✓ | ✓ | ✓ | ✓ |
| Calls with Russell Gray and Mona Guarino | ✗ | ✗ | ✓ | ✗ |
| E-mail Correspondence with Eric Shelly | ✓ | ✓ | ✓ | ✓ |
| Text correspondence with Eric Shelly | ✗ | ✗ | ✓ | ✗ |
| E-mail Correspondence with Emily Niebuhr | ✗ | ✗ | ✓ | ✓ |
| E-mail Correspondence with Mark Livingston | ✓ | ✗ | ✗ | ✗ |
| E-mail Correspondence with John Harasin | ✓ | ✓ | ✗ | ✗ |
| E-mail Correspondence with Rowan Shelly | ✓ | ✗ | ✓ | ✓ |
| E-mail Correspondence with Jim Vilt | ✗ | ✗ | ✓ | ✗ |
| Discussed FIC Offerings with Glynn Frechette | ✗ | ✓ | N/A | ✓ |
| Discussed FIC Offerings with Kristin Scharf | ✗ | ✗ | ✓ | N/A |
| Discussed FIC Offerings with Jack Krupey | ✓ | N/A | ✓ | ✗ |
| Discussed FIC Offerings with Alex Goldovsky | N/A | ✓ | ✗ | ✗ |
| Podcasts, YouTube Videos or Webinars | ✓ | ✓ | ✓ | ✓ |
| Personal Due Diligence of external information on CETA, FIC, and Associated Individuals | ✓ | ✗ | ✓ | ✗ |

Dkt. No. 81 at 11; *see also* Dkt. No. 82 at App. 2–3.

C&N's chart demonstrates that the Court will likely have to engage in a transaction-by-transaction inquiry to determine each defendants' liability. The need to conduct such an individualized inquiry defeats the predominance requirement of Rule 23(b)(3). *See Turk*, 2019 WL 13074697, at *3 (citing O'*Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 742 (5th Cir. 2003). Given the varying oral representations and different materials considered by the individual investors, individual questions of fact will likely predominate at trial.

The plaintiffs have not met their burden of establishing that the questions of law or fact common to class members predominate over any questions affecting only individual members. In light of all the potential individualized issues identified above, the Court finds that this case is not suitable for class certification under Rule 23(b)(3). The undersigned therefore **RECOMMENDS** that the Court **DENY** the plaintiffs' motion for class certification.

### III.     RECOMMENDATION

For the above reasons, it is the **RECOMMENDATION** of the United States Magistrate Judge to the United States District Judge that the plaintiffs' motion for class certification (Dkt. No. 71) be **DENIED**.

### IV.     OBJECTIONS

The parties may wish to file objections to this Report and Recommendation. Parties filing objections must specifically identify those findings or recommendations to which they object. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the

Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc). Except upon grounds of plain error, failing to object shall further bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas*, 474 U.S. at 150–53; *Douglass*, 79 F.3d at 1428–29.

**SIGNED** this 26th day of September, 2025.

_____
DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE